MICHAEL A. SHAPIRO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shapiro v. Commissioner
Docket No. 27414-92
United States Tax Court
T.C. Memo 1994-105; 1994 Tax Ct. Memo LEXIS 106; 67 T.C.M. (CCH) 2389; March 16, 1994, Filed *106 Decision will be entered for respondent. Michael A. Shapiro, pro se. For respondent: Thomas Carter. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined a deficienty in petitioner's 1989 Federal income tax in the amount of $ 750, plus a penalty under section 6662(a) in the amount of $ 150. The issues for decision are: (1) Whether petitioner may deduct, in accordance with the provisions of sections 162 and 274, the expenses of boarding, riding, and showing his quarter horse; and (2) whether petitioner is liable for the penalty under section 6662(a). Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. At *107 the time of the filing of the petition herein, petitioner resided in Sherman Oaks, California. Petitioner bears the burden of proving respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Section 162
From 1974 to 1981, petitioner was employed by the Internal Revenue Service as an office auditor. In 1981, petitioner moved to Los Angeles, California, and, in 1985, became self-employed as an enrolled agent. During 1989, petitioner's practice consisted of tax preparation, bookkeeping, planning and management, and audit representation. A majority of petitioner's clientele was in the entertainment industry. Petitioner first began riding horses when he was 9 years old and has enjoyed riding since that time. One of petitioner's clients owned a quarter horse, and, in the fall of 1988, petitioner began riding the quarter horse on a regular basis. Petitioner testified that he viewed horseback riding as an opportunity to meet "horse people" who might become future clients. Petitioner was able to ride the horse whenever he wished at no cost or expense. However, later the client expressed the desire to sell *108 the horse. If petitioner did not buy the horse, it would have been sold to a third party. Thus, on April 26, 1989, petitioner purchased the quarter horse from his client. To increase his client base, petitioner testified that he began to compete in the amateur division of the Pacific Coast Horse Show Association circuit. Petitioner testified that the shows generally attracted 100 to 150 competitors, as well as many horse enthusiasts. Petitioner testified that people would recognize him, and inevitably ask what he did for a living, at which point he could inform them that he was a tax adviser. Moreover, petitioner testified that he gained several clients from his involvement with horses. During 1989, petitioner attended the Costa Mesa Horse Show, the Pacific Coast Cutting Horse Auction and Show, and the Santa Barbara Nationals. While at these events, neither petitioner nor his horse wore or displayed any forms of advertisement which would associate petitioner and his horse with petitioner's enrolled agent practice. Additionally, during the period from April 26, 1989, through December 31, 1989, petitioner rode his horse either at the Los Angeles Equestrian Center or the Paddock *109 Riding Club 3 or 4 times per week. In 1989, petitioner incurred $ 8,337 [2] in expenses related to the training, boarding, and showing of his quarter horse. Of this amount, petitioner deducted $ 5,000 of the expenses on his 1989 Schedule C as travel expenses. Petitioner concedes that he erroneously deducted the latter amount as travel expenses; however, he contends that the expenses claimed constitute ordinary and necessary business expenses because they were incurred to gain clients. Respondent disallowed the expenses contending that they are not ordinary and necessary under section 162. Alternatively, respondent contends that petitioner has failed to substantiate the claimed expenses pursuant to section 274. Section 162(a) provides for the deduction of all the ordinary and necessary expenses paid or *110 incurred during the taxable year in carrying on any trade or business. "Ordinary" has been interpreted to mean that the expense must have a reasonably proximate relationship to the operation of the taxpayer's business. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940). "Necessary" has been interpreted to mean that the expense must be appropriate or helpful to the trade or business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966). The issue of whether the expenses are ordinary and necessary is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943); Walliser v. Commissioner, 72 T.C. 433, 437 (1979). Applying these general principles to the instant case, we do not think petitioner has shown that the expenses incurred in boarding, showing, and riding his horse were ordinary and necessary to the conduct of his business as an enrolled agent. In Henry v. Commissioner, 36 T.C. 879 (1961), the taxpayer, who was a tax lawyer and accountant, purchased a yacht on which he flew a red, white, and blue pennant with the *111 numbers "1040" on it, purportedly to provoke inquiries and thus promote his business by giving him contacts with people in yachting circles who might become his clients in the future. We held that the expenses associated with the yacht were not deductible as ordinary and necessary business expenses under section 162. In so holding we stated: We recognize, as * * * [the taxpayer] urges, that the business success of a lawyer or accountant rests upon the clients who may seek his professional services. We recognize moreover that these clients often come from the contacts -- business, social, personal, or political -- which a professional person, for whatever purpose and by whatever means, may develop or cultivate. * * * [The taxpayer] further requests that we recognize the fact, which we do, that generally a professional person should broaden his contacts in the interests of his practice, although the efforts may be long in producing tangible results. But were we to recognize that expenditures for normally personal pursuits become deductible business expenses simply because they afford contacts with possible future clients without showing a more direct relationship to the production *112 of business income, it is evident that most all club dues and similar expenditures, for example, as well as the expense of appearing at the right place at the right time with the right people, could be claimed as ordinary and necessary business expense. * * * [Id. at 885-886].
Petitioner's horse is in the same category as Henry's yacht; i.e., it was used in a normally personal pursuit with a possibility of a positive effect on petitioner's business. Based on this record, we cannot conclude that petitioner's horse-related expenditures were ordinary and necessary business expenses. Moreover, with respect to the amounts claimed for travel and lodging when petitioner attended the horse shows, even if we thought such expenses constituted ordinary and necessary business expenses, which we do not, they must also meet the stringent requirements of section 274. Section 274(d) requires that the taxpayer substantiate expenses claimed for travel by adequate records to corroborate his testimony as to (1) the amount of the expenses, (2) the time and place of travel, and (3) the business purpose of the travel. See sec. 1.274-5(b), Income Tax Regs. Although *113 petitioner has substantiated the amount of the expenses and the time and place of the travel, he has failed to prove that any of the trips to the horse shows were for business purposes as set forth in the regulations; i.e., no records were maintained to show whom petitioner talked to in a business context or what was discussed. Tyler v. Commissioner, T.C. Memo. 1982-160. Accordingly, we sustain respondent on this issue. [3]
Section 6662
Section 6662(a) and (b)(1) imposes a penalty on any portion of an underpayment which is attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with *114 the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. Petitioner has the burden of proof on this issue. Rule 142(a). Petitioner is an enrolled agent with many years of experience and should have been aware that his horse-related expenditures do not constitute ordinary and necessary business expenses. Based on this record, we hold that petitioner is liable for the penalty under section 6662(a). To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties agree that all of this amount was expended for the direct costs of care and feeding of the horse, except for $ 1,527.54 for "travel and lodging at shows" and $ 22 for "advertising (show programs)".↩
3. On this record, it is not clear whether the $ 22 claimed for advertising in show programs was for advertising petitioner's enrolled agent practice or for listing him as one of the show's participants. In any event, the amount is de minimis and would have no significant effect on taxpayer's tax liability.↩